IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WAYNE COOMBS, | : |
| | : |
|     Petitioner, | : |
| | : |
| v. | :    Civil Action No. 04-1841 |
| | : |
| DAVID DIGUILIELMO, et al., | : |
| | : |
|     Respondents. | : |

_____

**Rufe, J.**                                                                                              **February 29, 2008**

**MEMORANDUM OPINION AND ORDER**

      Petitioner, Wayne Coombs, filed this Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, based upon his convictions of nine counts of robbery and three counts of possession of an instrument of crime. Also before the Court are Respondents' Response to the Petition, U.S. Magistrate Judge Thomas J. Rueter's Report and Recommendation ("R&R"), and Petitioner's Objections to the R&R. Petitioner asserts that he was racially discriminated against during jury selection, in violation of the Equal Protection Clause of the Fourteenth Amendment, as interpreted by <u>Batson v. Kentucky</u>.[1] For the reasons that follow, the Court will approve and adopt Magistrate Judge Rueter's Recommendation, and deny the Petition for Writ of Habeas Corpus.

**I. BACKGROUND AND PROCEDURAL HISTORY**[2]

      Wayne Coombs was convicted by jury in the Court of Common Pleas of Philadelphia County on November 30, 2001, and was sentenced on February 13, 2002 to 59 to 160 years imprisonment.

---

[1] 476 U.S. 79, 96-98 (1986).

[2] The background and procedural history were gleaned from Petitioner's Habeas Petition, the Commonwealth's Response thereto, Petitioner's Reply, Magistrate Judge Rueter's R&R, the Petitioner's objections thereto, and the state court record.

He appealed to the Pennsylvania Superior Court, upon various grounds, including a claim that the conviction violated his constitutional rights under the Equal Protection Clause, as outlined by the Supreme Court in Batson.[3]  The trial court filed an opinion in support of judgment and the Superior Court affirmed.  A thorough and accurate recitation of the facts and procedural history appears in Judge Rueter's Report and Recommendation to this Court and is unnecessary to repeat here in full.[4]

In its opinion, the trial court relied on the then settled Pennsylvania Supreme Court interpretation of Batson, citing three aspects of the record Petitioner was required to produce in order to preserve his right to claim a Batson violation on appeal.[5]  The trial court found that Petitioner neither presented the required facts, nor preserved the necessary record, and therefore concluded that Petitioner's claim was without merit.

On appeal, the Pennsylvania Superior Court declined to address the merits of Petitioner's Batson claim, finding it was procedurally waived under Pennsylvania law.  The Pennsylvania Supreme Court denied certiorari on December 11, 2003, making Petitioner's adjudication in state court final.  Petitioner did not seek state collateral review before filing this Petition.  Exhaustion is not an issue on appeal, however, because Petitioner's claims were deemed procedurally defaulted

---

[3] In Batson, the U.S. Supreme Court outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner that violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution.  First, the Petitioner must make a prima facie case, showing that the prosecutor exercised peremptory challenges on the basis of race.  Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question.  Finally, the trial court makes a factual determination as to whether discrimination exists.  Batson, 476 U.S. at 96-98.

[4] Doc. No. 16.

[5] Referred to as the "Spence" rule, derived from the then-prevailing Pennsylvania Supreme Court case interpreting Batson, Commonwealth v. Spence, 534 Pa. 233 (1993) (requiring Petitioner submit: 1) the race of the venirepersons stricken by the Commonwealth; 2) the race of prospective jurors acceptable to the Commonwealth stricken by the defense; and 3) the racial composition of the final jury).

by state law, an exception to exhaustion under 28 U.S.C. § 2254(b)(1).[6] The subject Petition for Writ of Habeas Corpus was thereafter timely filed.

The Petition was first referred to Magistrate Judge Rueter to prepare a Report and Recommendation on May 4, 2004.[7] Judge Rueter determined that the trial court made a factual finding that was entitled to the utmost deference under the Anti-Effective Death Penalty Act of 1996 ("the AEDPA").[8] Judge Rueter stated that the habeas petition could not be granted unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that could not reasonably be justified under existing Supreme Court precedent.[9] In addition, he noted that "if a reasonable basis existed for the factual findings reached in the state court, then habeas relief is not warranted."[10]

Judge Rueter found the trial court made a reasonable decision, based on Batson, and on the merits of the claim. He reasoned that the explanations for the juror "strikes" at issue need not have been persuasive, or even plausible, but simply race-neutral, is consistent with the trial court's

---

[6] See Whitney v. Horn, 280 F.3d 240, 250 (3d Cir. 2002) (citing 28 U.S.C. § 2254 (b)(1) for the assertion that exhaustion of state remedies requires that Petitioner fairly present all federal claims to the highest state court, but that where the claims are procedurally barred, exhaustion is waived in the federal habeas court).

[7] Doc. No. 2. By Order, the matter was referred to the magistrate judge pursuant to Eastern District of Pennsylvania Local Civil Rule 72.1 and 28 U.S.C. §636(b)(1)(B), for preparation of a report and recommendation.

[8] 28 U.S.C. § 2254 (d)(1) and (2). The AEDPA requires a showing that the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

[9] R&R at 4 (citing Hernandez v. New York, 500 U.S. 352, 365 (1991) (intent to discriminate is a "pure issue of fact," and will "largely turn on an evaluation of credibility").

[10] R& R at 5 (citing Campbell v. Vaughn, 209 F.3d 280, 290-91 (3d Cir. 2000).

decision.[11]   For these reasons, the Magistrate Judge recommended denial of the habeas corpus petition.

## II. STANDARD OF REVIEW

Ordinarily, a petition for a writ of habeas corpus is reviewed by this Court in accordance with the deferential standard enunciated in the AEDPA, which requires petitioners to show that the state court proceedings either: " (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[12]  However, Petitioner urges that this case is not governed by the AEDPA, arguing that his claim was never adjudicated on the merits in state court.[13]  This Court agrees with the R&R, that the trial court addressed Petitioner's Batson claim on the merits, as affirmed by the Superior Court, and will apply the AEDPA standard of review.  In addition, determinations under Batson are presumed to be correct, and are based on an assessment of credibility.[14]  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Petitioner contends that if the trial court did address the merits of his Batson claim, the Superior Court erred in finding that he waived his rights to argue his appeal on the merits for failure

---

[11] Magistrate Judge Rueter cited Purkett v. Elem, 514 U.S. 765, 768-69 (1995) to support this analysis.

[12] 28 U.S.C. § 2254 (e)(1); § 2254 (d)(2).

[13] Petitioner cites Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001), stating that the standard of review announced in the AEDPA only applies to claims already adjudicated *on the merits* in state court proceedings. Petitioner argues that trial court Judge's assertion that the lawyers were "too good" to racially discriminate was not in accordance with the three-step Batson analysis.

[14] E.g., Purkett, 514 U.S. at 769; accord Riley v. Taylor, 277 F.3d 261, 281-82 (3d Cir. 2001) (en banc).

to preserve facts under the Spence rule.[15]  Rather, Petitioner asserts that this Court should rely on the Third Circuit decision in Holloway v. Horn,[16] decided in January, 2004 (after the final judgment in state court but before the federal Petition for Habeas Corpus), stating that the Spence rule constituted an unconstitutional application of Batson.[17]

This Court finds that Holloway does not apply to this case, based on the standard derived from Teague v. Lane,[18] for retroactive application of new rules of law.  The Third Circuit applied Teague to federal habeas review in Lloyd v. U.S.,[19] where the Court stated that the bar on retroactivity of new criminal procedural rules applies "equally to a federal habeas corpus Petitioner who wishes to collaterally attack his conviction, unless an exception applies."[20]  Petitioner does not meet either Teague exception, and thus Holloway cannot be retroactively applied to this appeal.[21]

### III. DISCUSSION

#### A. The AEDPA Analysis

Judge Rueter's R&R contains a complete and accurate recitation of facts pertaining to the

---

[15] Pet'r Br. at 11.

[16] 355 F.3d 707 (3d Cir. 2004).

[17] Pet'r Br. at 12.

[18] Teague v. Lane, 489 U.S. 288, 310 (1989) (finding that a new rule of criminal procedure will not be applicable to cases which have become final before the new rule is announced).

[19] 407 F.3d 608, 612 (3d cir. 2005).

[20] Id. at 611.The two exceptions to Teague warranting retroactive application are: 1) a new rule that places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe; and 2) a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.

[21] The first exception does not apply to this case because the Holloway rule is not beyond the power of the criminal law-making authority to proscribe.  The second exception likewise does not apply, as the Lloyd case articulated that "the Supreme Court has yet to find a new rule that falls under" this Teague exception, this Court does not find the instant matter to be such an exceptional case.

AEDPA analysis, which the Court adopts and incorporates by reference herein.[22]

### 1. The "Contrary to" Clause

The first avenue for relief under the AEDPA is referred to as the "contrary to" clause, and affords relief only where the state court adjudication on the merits was contrary to or unreasonably applied clearly established Federal law. Petitioner fails to present clear and convincing evidence to satisfy this standard for relief.

Under the Supreme Court's decision in Williams v. Taylor,[23] the "contrary to" clause affords relief only if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."[24] This standard is difficult to meet, as relief is limited to cases which directly and unequivocally contradict Supreme Court authority.

Petitioner argues that the trial court made a decision of law contrary to previously established federal law by failing to use the three-part Batson test in stating that he didn't see a pattern of discrimination, and that the lawyers were "too good" to discriminate. Petitioner asserts that the trial court disregarded Batson, and applied the federal law as it existed before Batson was ever decided.[25]

A reading of the voir dire transcript, however, shows that the trial judge did, in fact, use the Batson three-step process. On the first day of voir dire, both defense counsel and the prosecution

---

[22] See R.& R at 7-10.

[23] 529 U.S. 362, 413 (2000).

[24] Id. at 413.

[25] Objections to the R&R, at 3 (stating instead that the standard used was more like that in Swain v. Alabama, 380 U.S. 202 (1965)).

made Batson and reverse Batson challenges. The trial court heard the arguments of counsel.[26] The Court then required counsel to state their reasons for using their peremptory strikes.[27] Finally, the trial court ruled on both motions. Thus, the trial court followed the three-step Batson analysis. On the second day of voir dire, when additional challenges were raised, the trial Judge again followed the Batson steps, concluding, "I'm not finding there's another pattern [of discrimination],"[28] and denying the motion.[29] Petitioner's argument that Batson was entirely ignored is therefore without merit.

Petitioner has presented no Supreme Court precedent analogous to his claim, and the trial court did not apply the incorrect federal precedent. Thus, this Court must deny him relief pursuant to this section of the AEDPA, as was also determined by Magistrate Judge Rueter.

### 2. The "Unreasonable" Clause

The second alternative for relief under the AEDPA only applies when the factual determination made in the state court is objectively unreasonable.[30] As stated in the R&R, this, too, is a stringent standard.[31] Unless no reasonable basis exists for the findings, habeas relief is not warranted.[32] This Court agrees that Petitioner has failed to present clear and convincing evidence

---

[26] Trial Tr. Vol. 1, at 56 (stating "why don't we do it this way? Say what's your objection").

[27] Id. (stating "what's your reason for striking?").

[28] Id. at 73.

[29] Id. at 75 (defense counsel asking "Your honor is going to accept the Commonwealth's assertions and deny my motion?" to which the Court responded "Yes").

[30] Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000).

[31] R&R, at 5.

[32] Campbell v. Vaughn, 209 F.3d 280, 290-91 (3d Cir. 2000).

to satisfy this prong.[33]

The Batson analysis requires the trial judge, given the totality of the circumstances, to determine whether Petitioner established purposeful discrimination. This is based on the persuasiveness of the prosecutor's justification for his peremptory strike, which can best be determined by credibility determinations of the trial court, to which this Court defers.[34] The trial court found that the prosecutor's explanations based on varying characteristics of the venirepersons, including the prosecutor's reactions to juror "looks," were race-neutral and thus a reasonable determination.[35] Therefore, Petitioner cannot be afforded relief based on the second prong of the AEDPA.

### B. *De Novo* Analysis

Because Petitioner's claim is analyzed under the AEDPA, he is not entitled to a *de novo* review. However, even if he were entitled to a *de novo* review, his Batson claim would still fail under Batson's three-part test of discriminatory intent, as none of the prosecutorial reasons for striking African-American jurors evince the requisite level of intent required to substantiate a violation of the Equal Protection Clause of the Constitution.[36]

#### 1. Prima Facie Case

The first step of Batson requires a prima facie showing of discriminatory intent. The

---

[33] R& R at 5.

[34] Miller-El v. Cockrell, 537 U.S. 322, 338-39 (2003).

[35] R&R at 12 (citing e.g., Polk., 972 F.2d at 84-85) (finding that eye contact with the prosecutor was a legitimate reasons for striking jurors).

[36] The first step requires the Petitioner show a prima facie case of discriminatory intent. The burden then shifts to the respondent to offer a legitimate, race-neutral reason for striking a potential juror. Finally, the burden shifts back to the Petitioner to show that this explanation is pretext for racial discrimination.

determination of what constitutes a prima facie case is based on the law at the time the trial court made its determination, in this case, November of 2001, rather than the law as it exists today.[37]  A *de novo* review by this Court looks to the law in Pennsylvania in November, 2001, presented in Commonwealth v. Dinwiddie.[38]  In accordance with Dinwiddie, Petitioner presented himself as African-American, and potential jurors of the same race who were stricken.  Petitioner here merely showed that five out of six prosecution peremptory strikes were used on African-American jurors, without further evidence that the prosecutor was of a "mind to discriminate."[39]  Nevertheless, this Court finds that Petitioner has established a prima facie case of discrimination and, therefore will proceed to the next step in the analysis.

**2. Race-Neutral Reasons for Peremptory Strikes and the Determination of Discriminatory Intent**

The second step of a *de novo* Batson analysis requires that the prosecution present legitimate, race-neutral reasons for striking jurors of Petitioner's race from the venire.  The prosecutor's explanations need not be found to be persuasive, or even plausible, but simply race-neutral.[40]

On the first day of voir dire in response to defense objections, the prosecutor explained that

---

[37] Riley, 277 F.3d at 284.

[38] 529 Pa. 66, 71 (1992) (stating that "to establish such a case, a Petitioner first must show that he is of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of Petitioner's race.  Second, Petitioner is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate."  Finally, Petitioner must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the jurors for the petit jury on account of their race.  This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination").

[39] Trial Tr. Vol 2, at 74.

[40] Purkett, 514 U.S. at 768-69.

he struck juror number fourteen, whose brother was once charged with robbery, and juror number nineteen, whose mother was the victim of a robbery. Because Petitioner was charged in this case with robbery, these were legitimate, non-discriminatory reasons for striking the two jurors. On the second day of voir dire, the prosecution explained that he struck juror number twenty-two because her cousin was an eyewitness to a robbery. He struck juror number four because her nephew had been shot that summer, and another nephew was in jail on gun charges. This Court finds these are legitimate reasons to strike jurors unrelated to the race of the venirepersons.

Petitioner asserts that the proper analysis should be to compare the stricken African-American jurors with sitting white jurors to evaluate race-neutral explanations by the prosecution. He refers to five white jurors as having almost exactly, if not more prejudicial, characteristics as the five African-American jurors struck.[41] However, this analysis is only useful when the sole difference between the two groups is their race and there are no other race-neutral reasons for striking potential jurors,[42] or when the same reasons are proffered for striking members of each group. This analysis does not apply when there is more to distinguish varying explanations than just race. Here, while several sitting white jurors had been victims or eyewitnesses to crimes, they also provided responses to questions during voir dire that appealed to the prosecutor, such as trust in law enforcement. Therefore, on this record, it is impossible to say that the only difference between the jurors stricken and accepted was their race.

Nevertheless, Petitioner insists that these stated reasons were pretextual, and urges the Court

---

[41] Juror #9 had a grandmother who was robbed and assaulted in her home. Juror #17's mother was the victim of a robbery. Juror #29 was the victim of a crime. Juror #3 was the victim of three robberies in his home, and his mother's house was "robbed." Juror #15's friend was convicted of a crime and Juror #15 was the victim of a car theft.

[42] Riley, 277 F.3d at 280.

to find that the trial court made a clearly erroneous or unreasonable decision when it found no discriminatory intent.  For example, Petitioner asserts one strike potentially presented a considerable question of prosecutorial discrimination with respect to juror number one, Alexander Maston.  Petitioner argues that even if the prosecution presented legitimate reasons for striking the first four African-American jurors, none was presented with regard to Alexander Maston, who was stricken because the prosecutor "didn't like him."[43]  However, the prosecution's explanation was more extensive: the full explanation included that the prosecutor "didn't like the way [Mr. Maston] was looking at [the prosecutor]."  It is this aspect of the explanation that makes the strike legitimate and race-neutral.

While a review of Third Circuit precedent does not present a case with analogous facts, we are guided by other Circuit Court decisions in our analysis.  For example, the Fifth Circuit has held that Batson was not violated where counsel struck two African-American jurors based on "eyeball contact" and the expression on their faces.[44]  In addition, the Seventh Circuit found no Batson violation where a juror was stricken because the way she looked at the plaintiff made the defense feel she might have sympathy for the plaintiff.[45]  This Court agrees with the trial court that the prosecutor's perception of Mr. Matson's facial expression directed toward him was a legitimate, race-neutral explanation for striking that prospective juror.  Petitioner did not present further evidence of discriminatory intent, and therefore the trial court was correct to determine that a Batson violation did not occur.

---

[43] Trial Tr. Vol. 2, at 75.

[44] Polk, 972 F.2d at 84-85.

[45] Dunham v. Frank's Nursery & Crafts, Inc., 967 F.2d 1121, 1123-24 (7th Cir. 1992).

**C. Petitioner's Objections to the Report and Recommendation**

Where a Court designates a Magistrate Judge to provide a Report and Recommendation upon review of a habeas petition, as the case is here, "the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."[46] Of the twenty objections filed by Petitioner to the R&R, the Court need not address seventeen posed, as the Court finds Petitioner's list of objections to the findings in the R&R are merely reiterations of Petitioner's prior arguments, and have been adequately addressed in Section III.B. of this Memorandum Opinion.[47] Petitioner does, however, make several novel objections to Magistrate Rueter's Report and Recommendation, which this Court will address *de novo*.

### 1. "Batson Claims Present Question of Law and Fact"

Petitioner objects to Magistrate Judge Rueter's finding that a Batson claim presents a

---

[46] 28 U.S.C. § 636 (b) (1) (2000).

[47] *See* Pet'r Obj's to R&R. Petitioner's objections not reviewed by the court are paraphrased as follows: 1) Judge Rueter's finding that the state trial court made a finding of fact on the merits is incorrect; 2) the premise of Judge Rueter's recommendation is incorrect because the trial judge "made no findings of fact;" 4) there was no record to support a finding that Petitioner's claim was adjudicated on the merits; 5) the record demonstrates no clear evidence that the Batson claim was "adjudicated on the merits;" 6) the trial court's decision on Batson was, "at best," was a "facetious" comment; 7) the decision was "not based on prevailing federal law, but as if Batson were never decided" and Swain v. Alabama remained the last word on Equal Protection claims based on jury selection; 8) Judge Rueter's determinations that the trial judge found the prosecutor credible, that the prosecutor offered race-neutral reasons for his strikes, and that the strikes were not a Batson violation were either "intellectually dishonest or incredibly naive;" 9) there was "never an adjudication of Petitioner's Batson challenges, the judge just made a speech;" 10) a finding that the lawyers were "too good" to discriminate is not a valid reason for denying a Batson challenge; 11) "the most probative evidence of discriminatory intent is what actually happened," not what the prosecutor believes; 12) there was no adjudication on the merits for purposes of the AEDPA, but was simply the "state trial court's combination of ignorance of applicable federal constitutional law and obliviousness to the significance of the evidence presented;" 13) Judge Rueter's affirmation that Batson was not violated suggests he "summarily denied" Petitioner's petition; 14) the state court opinion "dispels any notion" that there was any factual finding, by stating that Petitioner failed to make out a prima facie case; 15) the purported "findings of fact" were " unreasonable and erroneous;" 16) the trial court's determination was contrary to, or involved an unreasonable application of clearly established Federal law; 17) the state court's determination was "a textbook example of a legally and factually unreasonable ruling;" and 18) "any ruling by the trial court resembling an adjudication on the merits was not only based on an unreasonable determination of the facts in light of the evidence presented, but was also contrary to clearly established Federal law."

question of fact, as opposed to the finding in Riley v. Taylor that it is a question of mixed law and fact.[48] However, the Riley petition for Habeas Corpus relief was filed before the AEDPA was enacted. Therefore, the Third Circuit was not interpreting the AEDPA nor its standard of review when it decided Riley. This is a critical distinction, as clarified by Taylor v. Horn.[49] In Taylor, the Third Circuit stated that "[i]f . . . the state court has *not reached the merits* of a claim thereafter presented . . . the federal habeas court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of the AEDPA."[50] Because the current Petitioner's claim was 1) reviewed on the merits and 2) reviewed by this Court under the AEDPA, Riley does not apply, and this Court must apply the presumption of correctness to the state court's findings of fact.[51] Thus, this objection to Magistrate Judge Rueter's R&R is without merit.

### 2. "Purkett Does Not Apply"

Petitioner's next objection was that Magistrate Judge Rueter inappropriately invoked Purkett to support the proposition that a prosecutor's race-neutral explanation for striking a juror need not be persuasive or even plausible.[52] Petitioner asserts that Purkett was an "unsigned," per curiam ruling, and thus non-controlling. He argues that the key issue should be guided by Hernandez,[53] that

---

[48] Riley, 277 F.3d at 277.

[49] 504 F.3d 416, 429 (3d. Cir. 2007).

[50] Id. at 429.

[51] Id.

[52] Pet'r Obj's to R&R, at 7.

[53] 500 U.S. 352, 360 (1991).

-13-

is the facial validity of the prosecutor's explanation. However, while Purkett, in a *per curiam* decision, it is valid, binding and precedential law in this Court.[54] In addition, Petitioner takes Hernandez out of context. The applicable passage from Hernandez stated in its entirety reads:

> "[a] neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."[55]

Thus, because the prosecutor's explanations do not display such inherent discrimination, Hernandez does not support Petitioner's argument that Magistrate Judge Rueter was incorrect in invoking Purkett. The objection is dismissed.

### 3. The R&R Invoked A "Per-Se Rule"

Lastly, Petitioner objects to Magistrate Judge Rueter's "attempt to draw meaningful distinctions" between sitting white jurors and struck African-American jurors. He relies on Miller-El v. Dretke,[56] which states that "a *per se* rule that a Petitioner cannot win a Batson claim unless there is an exactly identical white juror would leave Batson inoperable." However, Magistrate Judge Rueter never relied on any *per se* rule when he deferred to the findings of the trial court. Rather, he made an independent evaluation of whether the trial court erred in its determination that the prosecutor's race-neutral explanations were unreasonable. In doing so, he found that the

---

[54] See In re Paoli R.R. Yard PCB Litigation, 916 F.2d 829, 865 (3d Cir. 1990) (stating that "although the Supreme Court's affirmance of the panel decision in Ramon took the form of a summary, per curiam order, it nonetheless constitutes 'a binding decision of precedential authority' under the law of Pennsylvania." (citing Commonwealth v. Gretz, 520 Pa. 324, 325, 554 A.2d 19, 20 (1989)); see also Schrob v. Catterson, 948 F.2d 1402, 1407 (3d Cir. 1991) (stating that a per curiam Supreme Court opinion is controlling law).

[55] Id. at 360.

[56] 545 U.S. at 247.

explanations offered by the prosecutor were race-neutral, and that the trial court made reasonable determinations. The R&R cannot be read as containing any discussion comparing jurors. Magistrate Judge Rueter instead applied <u>Batson</u>'s requirement that race-neutral reasons be offered for striking potential jurors. This Court cannot find error in that analysis.

## IV. CONCLUSION

Petitioner has neither shown evidence of discrimination under *de novo* review on the merits of his claim, nor under the strict requirements of the AEDPA. Moreover, the Court does not find Petitioner's objections to the R&R persuasive. For the foregoing reasons, the Court herein approves and adopts Judge Rueter's R&R, and will deny Petitioner's Writ of Habeas Corpus.

Further, a Certificate of Appealability should not issue because Petitioner has failed to make a substantial showing of the denial of any Constitutional right.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WAYNE COOMBS, | : |
| | : |
| Petitioner, | : |
| | : |
| v. | :  Civil Action No. 04-1841 |
| | : |
| DAVID DIGUILIELMO, et al., | : |
| | : |
| Respondents. | : |

_____

### ORDER

**AND NOW**, this 29th day of February, 2008, upon consideration of Petitioner's Petition for Writ of Habeas Corpus [Doc. No. 1], the Respondent's Response [Doc. No. 13], Petitioner's Traverse in Response [Doc. No. 14], Magistrate Judge Rueter's Report and Recommendation [Doc. No. 16], and Petitioner's Objections thereto [Doc. No. 17], it is hereby,

**ORDERED** that Petitioner's Objections are **DENIED** and **DISMISSED**;

**ORDERED** that the R&R is **APPROVED** and **ADOPTED** for the reasons set forth in the attached Memorandum Opinion;

**ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED**.

The Clerk of Court is directed to **CLOSE** this case.

A Certificate of Appealability should not issue.

It is so **ORDERED**.

BY THE COURT:
/s/ Cynthia M. Rufe
_____
**CYNTHIA   M.   RUFE,   J.**